## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**AMERICAN ANTI-VIVISECTION SOCIETY**
801 Old York Road, #204
Jenkintown, PA 19046

and

**AVIAN WELFARE COALITION**
P.O. Box 40212
St. Paul, MN 55104

                Plaintiffs,

          v.                           Civil Case No. 1:18-cv-1138

**UNITED STATES DEPARTMENT OF AGRICULTURE**

and

**SONNY PERDUE**,
in his official capacity as United States Secretary of Agriculture,

                Defendants.

1

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      The Animal Welfare Act, 7 U.S.C. § 2131 *et seq.* ("AWA"), states that the USDA "shall" promulgate standards that protect "animals."  *Id.* at 2143(a)(1).  Since 1971, the USDA has taken the position that this mandate does not apply to birds.

2.      Since the enactment of the AWA, Congress has amended the statutory definition of "animal" to leave no doubt that it applies to birds not bred for research, and thus, that USDA "shall" promulgate standards that protect all such birds.

3.      In September 2000, USDA first agreed to initiate and complete a rulemaking on the regulation of birds "within a reasonable time in accordance with the Administrative Procedure Act and other applicable regulations."

4.      Since that statement nearly eighteen years ago, and sixteen years after Congress made indisputably clear that the AWA's mandate to regulate applies to birds, however, USDA has never promulgated *any* regulations that protect birds, even though it admits that the AWA applies to thousands of birds used in commerce and not bred for research.  Time and time again, USDA has publicly stated and published in the Federal Register its intent to promulgate regulations that protect birds, but it has failed to do so.

5.      The USDA's utter failure to act for nearly two decades to propose regulations that protect birds is an unreasonable delay of Congressionally-mandated action, and violates the Administrative Procedure Act ("APA").  The USDA has effectively made a final determination that it will not promulgate regulations that protect birds and this action also violates the APA because it is arbitrary and capricious and an abuse of its discretion.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) as Defendant United States Department of Agriculture is an agency of the United States which resides in this judicial district, and as a substantial part of the events and omissions giving rise to this action occurred in this judicial district.

## PARTIES

**American Anti-Vivisection Society**

8.      Plaintiff American Anti-Vivisection Society ("AAVS") is a non-profit 501(c)(3) organization incorporated in the Commonwealth of Pennsylvania with its principal place of business in Jenkintown, Pennsylvania.

9.      Founded in 1883, AAVS is the oldest non-profit animal advocacy and educational organization in the United States dedicated to ending experimentation on animals in science, including research, testing, and education.  Focused on the objectives of strong animal protective legislation, public awareness, and humane education, AAVS has spent much of its history promoting and seeking alternatives to the use of animals in science and society.  AAVS also has a Sanctuary Fund through which it protects former lab animals by finding them new, humane homes in animal sanctuaries.  AAVS is the chair of the renowned "Leaping Bunny" certification program, which logo appears on hundreds of products to certify that they are cruelty-free.

10.     Since the 1980s, AAVS has also worked to fund, promote, and reward those scientists who use non-animal methods through direct grants for alternatives-driven research.  Its first such grant was to a research team at the Medical College of Pennsylvania, which worked to create an alternative to a certain testing method that often blinded animals in cosmetic testing.  In this initiative, it closely partners with its affiliate the Alternatives Research & Development Foundation ("ARDF").

11.     Besides animal experimentation, AAVS also opposes and works to end other forms of cruelty to animals, participating in issues with respect to the mistreatment of animals in agriculture, entertainment, and other areas.

12.     AAVS has been involved specifically with efforts to protect birds throughout America for more than nineteen years, and has been a regular participant in meetings with USDA personnel regarding the planned and promised publication of regulations regarding the protection of birds under the AWA.  AAVS has – for many years – previously called for the USDA to comply with the Animal Welfare Act by providing minimal standards of care and treatment for birds, mice, and rats, which represent over 95% of animals used in research.  *See, e.g.*, *infra* ¶ 35.

13.     In response to the USDA's solicitation for comments earlier that year, on November 1, 2004, AAVS, AWC, and 27 other animal welfare organizations submitted joint comments to the Agency in support of proposed specific regulations for birds, rats, and mice not bred for research. As part of the comments, plaintiffs prepared a forty-two page set of recommendations for regulations of birds under the AWA.

14.     AAVS has expended significant amounts of organizational time, resources, and funds, other than for litigation purposes, in order to have the USDA enact regulations establishing welfare standards and protections for birds not bred for research.  But for USDA's unlawful withholding of regulations, AAVS would have devoted that same amount of time, resources and funds to other organizational projects.

15.     AAVS heavily relies on USDA's published records regarding inspections and other information regarding the condition of animals in regulated facilities.   For example, every year AAVS sends a report to its members based on USDA's reports.  AAVS is deprived of its

ability to keep its members informed of conditions with respect to birds as a result of USDA's unlawful failure to regulate the condition of birds.

**Avian Welfare Coalition**

16.     Plaintiff Avian Welfare Coalition ("AWC") was formed in 2000 to create a voice in the animal protection community for captive birds, including those birds in commerce covered by the AWA.  AWC is a working alliance dedicated to the ethical treatment of captive birds.  It is based in St. Paul, Minnesota.

17.     AWC's mission is to raise awareness about the plight of captive birds, and to serve as an educational resource for the humane community, law-makers, and the general public.

18.     Because of USDA's failure to enact regulations under the AWA that protect captive birds, AWC devotes a portion its limited resources to providing assistance, training, and education resources to shelter and animal control organizations in serving the needs of captive birds who are abused, harmed, or in danger.  AWC also supports numerous public educational outreach activities in connections with national and regional conferences.

19.     AWC has actively devoted its resources toward this issue specifically since at least October 2002, when AWC members met with a USDVA veterinarian.  AWC also met with a USDA Avian Specialist in 2006.

20.     In response to the USDA's solicitation for comments earlier that year, on November 1, 2004, AAVS, AWC, and 27 other animal welfare organizations submitted joint comments to the Agency in support of proposed specific regulations for birds, rats, and mice not bred for research. As part of the comments, plaintiffs prepared a forty-two page set of recommendations for regulations of birds under the AWA.

21.     AWC also provides resources for individuals who have witnessed and want to report bird abuse or neglect.  AWC's efforts in this regard are hampered by the lack of any national regulation that protects birds.  Instead, AWC directs some of its resources to tracking the patchwork of varying laws that apply across the fifty states, specifically because there are no federal regulations under the AWA that would cover birds nationwide.  Further, AWC is severely limited in its ability to take action regarding the many complaints of bird abuse it receives each year because USDA has denied this avenue of redress through its lack of regulations regarding birds, and its refusal to respond to calls regarding birds in distress who are covered by the AWA.

22.     AWC has expended significant amounts of organizational time, resources, and funds, other than for litigation purposes, in order to have the USDA enact regulations establishing welfare standards and protections for birds not bred for research.  But for USDA's unlawful withholding of regulations, AWC would have devoted that same time, resources and funds to other organizational projects.

**Defendants**

23.     Defendants USDA and Sonny Perdue, who is sued in his official capacity as the United States Secretary of Agriculture, are responsible for administering the Animal Welfare Act ("AWA"), 7 U.S.C. §§ 2131-2159.  For the purposes of this Complaint, both Defendants shall be referred to as "USDA" or "agency."

**FACTUAL ALLEGATIONS AND LEGAL BACKGROUND**

**The Animal Welfare Act and Its Sixteen-Year-Old Mandate to Protect Birds**

24.     Congress enacted the AWA in 1966 in order to, *inter alia*, "insure that animals intended for use in research facilities or for exhibition purposes or for use as pets are provided

humane care and treatment" and "to assure the humane treatment of animals during

transportation in commerce."  7 U.S.C. § 2131(1).  In fact, Congress found it "*essential to

regulate* . . . the transportation, purchase, sale, housing, care, handling, and treatment of

animals."  *Id.* § 2131 (emphasis added).

25.     In order to accomplish Congress' purpose, the AWA requires the USDA to

promulgate standards and other requirements governing the humane handling, care, treatment,

and transportation of animals covered by the AWA.  *See id.* § 2143.  Specifically, it states: "The

Secretary shall promulgate standards to govern the humane handling, care, treatment, and

transportation of animals by dealers, research facilities, and exhibitors."  *Id.*

26.     The AWA also requires the USDA to inspect and investigate for potential

violations of these standards.  *See id.* § 2146.  It also establishes a system of licensure,

registration, and initial inspection for compliance.  *See, e.g.*, 7 U.S.C. §§ 2133, 2136.

27.     The AWA's original definition of "animal" only included "live dogs, cats,

monkeys (nonhuman primate mammals), guinea pigs, hamsters, and rabbits."  7 U.S.C. §

2132(h) (1966).

28.     Four years later, Congress expanded this definition, so that the definition of

"animal" included "such other warmblooded animal, as the Secretary may determine is being

used, or is intended for use, for . . . exhibition purposes."  7 U.S.C. § 2132(g) (1970).

29.     Birds, rats and mice are all warmblooded animals.  Yet in its initial implementing

regulations, the USDA determined that "animal" should be defined to exclude *all* birds, rats, and

mice from coverage under the AWA—*i.e.*, despite being warmblooded, such animals were not

considered by the USDA to be "animals" subject to the Act.  *See* USDA, Miscellaneous

Amendments to Chapter, 36 Fed. Reg. 24,917, 24,919 (Dec. 24, 1971).

30.     In 2002, Congress amended the AWA's statutory definition of covered "animals."

The new definition, operative to this day, still includes warm-blooded animals but now expressly

"excludes . . . birds, rats of the genus Rattus, and mice of the genus Mus, bred for use in

research."  7 U.S.C. § 2132(g).[1]  Under this new definition, while birds "bred for use in research"

are not covered animals, all other birds are indisputably covered by the AWA.  Thus, this

definition provides protection under the AWA to birds used in regulated activities, including

birds used in exhibition, sold by commercial dealers, and those birds used in research but not

bred for such use.

**USDA Refuses to Follow Congress' Mandate to Regulate to Protect Birds**

31.     In 2004, the USDA confirmed unequivocally that the AWA applies to birds other

than those bred for use in research.  In order to make the definition of "animal" in the AWA

regulations consistent with the amended statutory definition, the USDA amended its regulations

"by narrowing the scope of the exclusion for birds to only those birds bred for use in research."

USDA, Animal Welfare; Definition of Animal, Final Rule, 69 Fed. Reg. 31,513 (June 4, 2004);

*see also* 9 C.F.R. § 1.1.[2]

---

[1] The full definition is as follows: "The term 'animal' means any live or dead dog, cat, monkey (nonhuman primate mammal), guinea pig, hamster, rabbit, or such other warm-blooded animal, as the Secretary may determine is being used, or is intended for use, for research, testing, experimentation, or exhibition purposes, or as a pet; but such term excludes (1) birds, rats of the genus Rattus, and mice of the genus Mus, bred for use in research, (2) horses not used for research purposes, and (3) other farm animals, such as, but not limited to livestock or poultry, used or intended for use as food or fiber, or livestock or poultry used or intended for use for improving animal nutrition, breeding, management, or production efficiency, or for improving the quality of food or fiber. With respect to a dog, the term means all dogs including those used for hunting, security, or breeding purposes."  7 U.S.C. § 2132(g).

[2] Closely mirroring the statutory definition, the regulatory definition of an animal is: "any live or dead dog, cat, nonhuman primate, guinea pig, hamster, rabbit, or any other warmblooded animal, which is being used, or is intended for use for research, teaching, testing, experimentation, or exhibition purposes, or as a pet. This term excludes birds, rats of the genus Rattus, and mice of the genus Mus, bred for use in research; horses not used for research purposes; and other farm animals, such as, but not limited to, livestock or poultry used or intended for use as food or fiber, or livestock or poultry used or intended for use for improving animal nutrition, breeding, management, or production efficiency, or for improving the

32.     On the same day, the USDA also published an Advance Notice of Proposed Rulemaking, notifying the public that it intended to "develop appropriate standards for birds" not bred for use in research.  USDA, Animal Welfare Act Regulations and Standards for Birds, Rats, and Mice, Advance Notice of Proposed Rulemaking and Request for Comments, 69 Fed. Reg. 31,537-38 (June 4, 2004).

33.     The USDA also stated at that time, and has repeatedly reaffirmed, that its general animal welfare standards, 9 C.F.R. §§ 3.125–3.142, do *not* apply to birds, and that only bird-specific standards would be used for oversight and inspection of entities involved with birds that were covered by the AWA.  The USDA informed the public that it "d[id] not believe that the general standards . . . would be appropriate or adequate to provide for the humane handling, care, treatment, and transportation of birds."  69 Fed. Reg. at 31,539.

34.     Recognizing its obligation to act in order to comply with its statutory mandate, the USDA further informed the public that "before [it could] begin enforcing the AWA with respect to . . . birds," that the USDA would need to consider bird-specific regulations.  *See id.* at 31,538-39.  Therefore, it sought public comment for the purpose of publishing a proposed rule in the Federal Register.  *Id.* at 31,539.

35.     In response to the USDA's solicitation for comments earlier that year, on November 1, 2004, AAVS, AWC, and 28 other animal welfare organizations submitted joint comments to the Agency in support of proposed specific regulations for birds, rats, and mice not bred for research. As part of the comments, plaintiffs prepared a forty-two page set of recommendations for regulations of birds under the AWA.

---

quality of food or fiber. With respect to a dog, the term means all dogs, including those used for hunting, security, or breeding purposes."  9 C.F.R. § 1.1.

36.     Although the comment period for the Advance Notice of Proposed Rulemaking for birds closed on November 1, 2004, the USDA has to date not taken any substantive actions to enact specific regulations governing birds.  Instead, the USDA has expressly adopted a general position that birds are not under its jurisdiction and are not regulated under the AWA, and has repeatedly broken promises to enact bird-specific regulations.

**USDA Continues to Fail to Extend Protection to Birds for Over Thirteen More Years**

37.     To date, the USDA has failed to even *propose*, let alone enact, regulations applicable to birds.  It has, however, promulgated general standards that it deems inapplicable to birds, as well as specific standards for certain species of covered animals, including dogs, cats, rabbits, hamsters, guinea pigs, nonhuman primates, and marine mammals.  See 9 C.F.R. §§ 3.1–3.118.

38.     Instead, the USDA has repeatedly set, missed, and reset deadlines for publishing bird-specific regulations, all the while affirming that its general regulations do not apply to birds.

39.     Even before Congress amended the definition of "animal" in 2002 to clearly protect birds, thus requiring USDA to protect them via regulations, USDA had unequivocally confirmed that the AWA applied to birds *and* promised to regulations applicable to birds.  An animal welfare organization, along with a corporation and individual, filed a lawsuit challenging the USDA's exclusion of all birds, as well as rats, and mice bred for use in research, from coverage under the AWA.  *See generally*, *Alterns. Research & Dev. Found. v. Glickman*, 101 F. Supp. 2d 7 (D.D.C. 2000).  The district court noted that the USDA "ha[d] consistently refused to regulate these animals since 1970," *id*. at 16, and the parties entered into a settlement agreement.  A true and correct copy of that settlement agreement is attached hereto as **Exhibit A**.  In that agreement, the USDA promised to and "initiate and complete a rulemaking on the regulation of

birds, rats[,] and mice *within a reasonable time* in accordance with the Administrative Procedure Act and other applicable regulations."   (Emphasis added.)

40.     Now, nearly eighteen years after that promise, the USDA has failed to publish even *proposed* regulations.

41.     The time between the USDA's first guarantees and the filing of this lawsuit is regularly punctuated by broken promises to enact regulations to protect birds according to its Congressional mandate.

42.     On March 23, 2005, the USDA convened an Animal Welfare Stakeholder Meeting where Sue Leary, AAVS' President, reiterated the need for the agency to propose regulations to bring birds within the AWA's protection.

43.     On October 31, 2005, the USDA published a Statement of Regulatory Priorities, identifying bird-specific regulations as a regulatory priority and stating its intention to publish proposed bird-specific regulations by September 2006.  Unified Agenda, USDA, Statement of Regulatory Priorities, 70 Fed. Reg. 64,097, 64,104 (Oct. 31, 2005).

44.     On March 16, 2006, the USDA convened another Animal Welfare Stakeholder Meeting where it stated that it was having difficulty determining the number of entities that would be covered by bringing birds not bred for use in research within the protection of the AWA.  The Agency also stated that it planned on hiring an Avian Specialist to help develop bird-specific regulations.

45.     On December 11, 2006, the Agency published another Statement of Regulatory Priorities, identifying bird-specific regulations as a regulatory priority for 2007.  USDA, Statement of Regulatory Priorities, 71 Fed. Reg. 72,736, 72,738 (Dec. 11, 2006).

46.     On April 30, 2007, the USDA published another statement in the Federal Register reporting that it intended to promulgate bird-specific regulations and indicated that such standards would be proposed by February 2008.  Unified Agenda, USDA, 72 Fed. Reg. 22,266, 22,266 (Apr. 30, 2007).

47.     On May 15, 2007, the USDA convened another Animal Welfare Stakeholder Meeting and reiterated that bird-specific regulations were a top priority for the agency in 2007. Chester Gipson, the Deputy Director of the USDA's Animal and Plant Health Inspection Service ("APHIS") (the agency tasked with administering the AWA), announced that bird-specific regulations *had been drafted* and were awaiting clearance from the Agency.

48.     At that 2007 meeting, Dr. Gipson stated that the bird-specific regulations would be cleared by the Agency by the end of that month, and stated that the proposed regulations would then undergo a legal review by the USDA's Office of General Counsel (OGC), were scheduled for publication by the end of 2007, and would include a 60-day comment period.

49.     On December 10, 2007, the USDA published another Statement of Regulatory Priorities, identifying bird-specific regulations as regulatory priority for 2008.  Unified Agenda, USDA, Statement of Regulatory Priorities, 72 Fed. Reg. 69,755, 69,757 (Dec. 10, 2007).

50.     On May 5, 2008, the Agency published another statement in the Federal Register stating that it intended to promulgate bird-specific regulations and indicated that such standards would be proposed by September 2008.  Unified Agenda, USDA, 73 Fed. Reg. 24,640, 24,640 (May 5, 2008).

51.     At a July 23, 2008, USDA Animal Welfare Stakeholders Meeting, the USDA stated that bird-specific regulations were still in the process of review by the agency's OGC—

despite its prior claim in May of 2007 that the OGC's review would be completed by the end of that month.

52.    On November 24, 2008, the Agency published its Statement of Regulatory Priorities for 2009, again identifying bird-specific regulations as a regulatory priority for coming year.  Unified Agenda, USDA, Statement of Regulatory Priorities, 73 Fed. Reg. 71,112, 71,117 (Nov. 24, 2008).

53.    At the March 10, 2009, USDA Animal Welfare Stakeholders Meeting, the same USDA official stated that there was a temporary freeze on all regulations for approximately one month, but stated that bird-specific regulations had been approved by the Agency's OGC and were now with the Office of Management and Budget (OMB) for a cost-benefit analysis to determine the effect on small entities.  The official estimated that OMB's review would take 90 days.  Ms. Leary asked whether it would be reasonable to expect proposed regulations by September or October of 2009.  The USDA official said that was possible.

54.    On May 11, 2009, the USDA published another statement in the Federal Register indicating its intention to promulgate bird-specific regulations, and indicated that such standards would be proposed by November 2009.  Unified Agenda, USDA, 74 Fed. Reg. 21,873, 21,873 (May 11, 2009).

55.    Having missed yet another of its own deadlines to publish regulations that applied to birds, on December 7, 2009, the USDA repeated its longstanding pattern and once again issued a statement in the Federal Register reiterating its promise to promulgate bird-specific regulations and indicated that such standards would be proposed by January 2010.  74 Fed. Reg. 64149 (Dec. 7, 2009).

56.     At the March 10, 2010, USDA Animal Welfare Stakeholders Meeting, the USDA stated that bird-specific regulations were scheduled for release in August 2010, with a 90-day comment period.  The Agency also stated that it would not be proposing specific standards for rats, and mice and would continue to regulate rats, and mice under the general standards.

57.     On April 26, 2010, the Agency again reiterated the August 2010 date for proposed bird-specific regulations by publishing that deadline in the Federal Register.  Unified Agenda, USDA, 75 Fed. Reg. 21,736, 21,736 (Apr. 26, 2010).  As with each of the other deadlines, August 2010 came and went without any proposed standards being published.

58.     In the USDA's Statement of Regulatory priorities for 2011 published on December 20, 2010, the agency identified bird-specific regulations as a regulatory priority and indicated standards would be proposed by August 2011.  Unified Agenda, USDA, Statement of Regulatory Priorities, 75 Fed. Reg. 79,467, 79,474, 79,469 (Dec. 20, 2010).

59.     At the April 26, 2011, USDA Animal Welfare Stakeholders Meeting, Dr. Johanna Briscoe, the Avian Specialist for the Agency, stated that the USDA was "reassessing" the information it had gathered in connection with issuing bird-specific regulations.

60.     On July 7, 2011, the USDA published a mid-year regulatory agenda in which it restated its intention to promulgate bird-specific regulations.  Unified Agenda, USDA, Semi-annual Regulatory Agenda, Spring 2011, 76 Fed. Reg. 39,998, 40,003 (July 7, 2011).

61.     The following week, on July 12, 2011, OMB published a list of upcoming standards on its website, including a notice that it intended to publish proposed bird-specific standards on August 1, 2011, and providing that there would be a 90-day comment period that opened when the regulations were published.  *See* Office of Information and Regulatory Affairs, Office of Management and Budget, Executive Office of the President, View Rule, available at:

http://www.reginfo.gov/public/do/eAgendaViewRule?pubId=201104&RIN=0579-AC02.  The

proposed rules were not published on August 1, 2011.

62.     In August 2011, the agency published a "Factsheet" stating that it anticipated

release of the new  regulations applicable to birds "during 2011," that comments would be taken,

and that a final rule could be expected within one to two years after that.

63.     On September 15, 2011, Dr. Gipson of APHIS met with animal welfare advocates

and stated that the proposed bird-specific regulations were not yet with OMB.  When the animal

protection advocates asked if it would be another year before the regulations were proposed, he

asserted that it would not take that long.

64.     On February 13, 2012, the Agency again identified bird-specific regulations as a

regulatory priority for 2012 and indicated that it would publish proposed bird-specific standards

by May 2012.  Introduction to the Unified Agenda of Federal Regulatory and Deregulatory

Actions, 77 Fed. Reg. 7664, 7677-78, 7685 (Feb. 13, 2012).

65.     On June 14, 2012, the Agency informed animal protection advocates that the

regulations were in department clearance but had not yet been through OMB.

66.     On January 8, 2013, the Agency again stated its intention to promulgate bird-

specific regulations and indicated standards would be proposed by November 2013.  Unified

Agenda, USDA, Semi-annual Regulatory Agenda, Fall 2012, 78 Fed. Reg. 1522, 1526 (Jan. 8,

2013).

67.     At the May 1, 2013, Animal Welfare Stakeholder Meeting, a USDA official

confirmed that USDA does not apply the general AWA standards when it receives complaints

about mistreatment of birds, but instead refers such complaints to local law enforcement

authorities.

68.     On May 21, 2013, the USDA again informed animal welfare advocates that the regulations had still not been passed along to OMB for review.

69.     Despite the surprising regularity of the statements and the fact that the USDA again missed its most-recently-stated deadline of November 2013, the Agency has not made any subsequent statement *in the last five years* regarding its intention to promulgate regulations applicable to birds or indicated a new deadline by which it would be doing so.  The issue appears to have completely fallen off the regulatory agenda.

70.     During this delay that is rapidly approaching two decades, the USDA has consistently refused to apply the AWA to birds in any way. Indeed, it does not even require exhibitors, breeders, or dealers of birds to obtain an AWA license to conduct activity that is clearly covered by the Act.  For almost twenty years, there has been no federal protection for birds covered by the AWA, despite a clear mandate and an admitted obligation to enact regulations.

**The Consequences of the Agency's Breach**

71.     Because the facilities that would otherwise be covered by the AWA are not being inspected or licensed by the Agency, birds that would otherwise be covered by the AWA are living in situations with absolutely no regulatory oversight, despite Congressional intent to the contrary, and despite the Agency's promise to regulate facilities with birds.

72.     Consistent with its refusal to enact regulations, the USDA has repeatedly asserted, in response to complaints about bird treatment, that birds "do not fall under USDA jurisdiction," are "not regulated under the AWA," and that, therefore, Agency inspectors cannot issue citations pertaining to birds.

73.     Sixteen years after Congress declared that birds not bred for research are covered under the AWA, the USDA still has done nothing to protect those species and instead affirmatively refuses to enact regulations applicable to them.  Contrary to clearly expressed Congressional intent, under the current state of the USDA regulatory landscape, birds can be and are denied food, water, adequate space, veterinary care, and sanitation.

74.     The Agency's indifference to birds' suffering is confirmed in its own reports.  In response to a whistleblower complaint that more than five hundred birds had died in the span of approximately two years from starvation or parasites at one facility that would be covered under the AWA, the Agency claimed that birds are "[n]ot under our jurisdiction."

75.     When feral dogs attacked and killed several flamingos at a zoo, the Agency found that "[n]o regulated species were attacked or killed."

76.     In response to a complaint that fifteen parrots died in a fire, an Agency memorandum stated that birds "are not a regulated species and DO NOT FALL UNDER USDA REGULATION."

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF (5 U.S.C. § 706(1))

77.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

78.     Section 2143 of the AWA unequivocally requires that the USDA promulgate standards and other requirements governing the humane handling, care, treatment, and transportation of animals covered by the AWA, which includes birds.  7 U.S.C. § 2143(a).

79.     The Agency has failed to even *propose*, let alone enact, specific regulations for birds not bred for use in research.  It has also failed to even extend or construe as applicable the general standards to birds.

80.     The Agency's failure to promulgate standards that govern the humane handling, care, treatment, and transportation of birds covered by the AWA violates the AWA and constitutes agency action unlawfully withheld and unreasonably delayed in violation of the APA, 5 U.S.C. § 706(1).

81.     As a direct and proximate result of the USDA's unlawful action, USDA has caused and will continue to cause Plaintiffs' injuries as outlined herein.

## SECOND CLAIM FOR RELIEF (5 U.S.C. § 706(2))

82.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

83.     Section 2143 of the AWA unequivocally requires that the USDA promulgate standards and other requirements governing the humane handling, care, treatment, and transportation of animals covered by the AWA, which includes birds.  7 U.S.C. § 2143(a).

84.     The USDA has conclusively determined that it is not required to, and will not, enact regulations applicable to birds.  The Agency has failed to even *propose*, let alone enact, specific regulations for birds not bred for use in research.  It has also consistently taken the position that its general standards categorically do not apply birds.

85.     The Agency's failure to promulgate standards that govern the humane handling, care, treatment, and transportation of birds covered by the AWA violates the AWA and constitutes an effectively final agency action that is arbitrary, capricious, an abuse of discretion, and contrary to law, in violation of the APA, 5 U.S.C. § 706(2).

18

86. As a direct and proximate result of the USDA's unlawful action, USDA has caused and will continue to cause Plaintiffs' injuries as outlined herein.

**REQUEST FOR RELIEF**

Plaintiffs request that this Court enter judgment against Defendants as follows:

1. Declaring that the USDA's failure to promulgate regulations applicable to birds violates the AWA, 7 U.S.C. §§ 2131-2159, and constitutes agency action "unlawfully withheld" and/or "unreasonably delayed" in violation of Section 706(1) of the APA, 5 U.S.C. § 706(1);

2. Declaring that the USDA's failure to promulgate regulations applicable to birds violates the AWA, 7 U.S.C. §§ 2131-2159, and constitutes an agency act that is arbitrary, capricious, an abuse of discretion, and/or contrary to law, in violation of Section 706(2) of the APA, 5 U.S.C. § 706(2);

3. Compelling the USDA to (i) publish for comment in the Federal Register, by a Court-ordered deadline, proposed rule(s) that govern the humane handling, care, treatment, and transportation of birds; and (ii) promulgate, by a Court-ordered deadline, standards to ensure the humane handling, care, treatment, and transportation of birds covered by the AWA;

4. Awarding Plaintiffs their attorneys' fees and expenses as allowed pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq*., and as permitted by other applicable law;

5. Awarding Plaintiffs their costs and interest as permitted by law; and

6. Granting such other and further relief as the Court may deem just and proper.


Dated: May 15, 2018                    McGuireWoods LLP

                                       */s/ E. Rebecca Gantt*
                                       E. Rebecca Gantt (D.C. Bar # 988752)
                                       World Trade Center
                                       101 West Main St.

Suite 9000
Norfolk, VA 23510
(t) (757) 640-3731
(f) (757) 640-3940
(e) rgantt@mcguirewoods.com


SCHIFF HARDIN LLP

*/s/ Bruce A. Wagman*
Bruce A. Wagman (*pro hac vice* pending)
One Market Street, Spear Tower, 31st Fl.
San Francisco, CA  94105
(t) 415-901-8762
(e) bwagman@schiffhardin.com

*Attorneys for Plaintiffs AAVS & AWC*